# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche M. Manning | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 c 2424 | **DATE** | August 28, 2001 |
| **CASE TITLE** | *Eugene Winkler, et. al., v. Chicago School Reform Board of Trustees, et. al.* | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated in the attached memorandum opinion and order, the defendants' motions to dismiss are GRANTED in part and DENIED in part. The parties are ordered to appear for status on October 5, 2001 at 10:00 a.m. IT IS SO ORDERED.

(11) ☐ [For further detail see order on the reverse side of the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | AUG 2 9 2001 | |
| | Notified counsel by telephone. | | date docketed | 110 |
| | Docketing to mail notices. | ED-7 FILED FOR DOCKETING | | |
| | Mail AO 450 form. | 01 AUG 28 PM 5: 23 | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| RTS | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

|  |  |  |
|---|---|---|
| EUGENE WINKLER, GARY GERSON, TIMUEL BLACK, MARY CAY MARUBIO, and C. DOUGLAS FERGUSON, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | 99 c 2424 |
| CHICAGO SCHOOL REFORM BOARD OF TRUSTEES, on its own behalf and on behalf of those entities similarly situated; WILLIAM S. COHEN, as Secretary of Defense; the UNITED STATES DEPARTMENT OF DEFENSE; ANDREW M. CUOMO, as Secretary of Housing and Urban Development; and the UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT[1], | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs are five individuals who have filed a three-count complaint against defendants, the Department of Defense and William S. Cohen, the Secretary of Defense (collectively, "Defense"), the Department of Housing and Urban Development and Andrew Cuomo, the Secretary of Housing and Urban Development

---

[1] This suit was filed during President William J. Clinton's administration and, therefore, names the Secretaries in his Cabinet. For the purpose of convenience, the court has chosen to retain the names of the defendants although Donald Rumsfeld is the Secretary of Defense and Mel Martinez is the Secretary of Housing and Urban Development under President George W. Bush's administration.

110

(collectively, "HUD") and the Chicago School Reform Board. Their complaint against HUD and Defense, two federal agencies, is that they sponsor -- by which, plaintiffs mean the defendants expend federal tax money pursuant to congressional expenditure programs in the ownership and operation of -- scouting units which are chartered by the Boy Scouts of America (the "BSA"). Plaintiffs allege that this sponsorship violates the establishment clause of the first amendment to the Constitution of the United States of America. This is because scouting units require its participants to affirm a belief in God.

Therefore, plaintiffs invoke this court's federal question jurisdiction and allege that through the sponsoring of these units, defendants violate the constitution by establishing religion and excluding individuals on the basis of religious belief. HUD and Defense have each filed separate motions to dismiss for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Also, HUD and Defense have adopted each other's motion to dismiss.

## I. *Background*

### A. **Parties**

The following facts are derived from the plaintiffs' complaint and are assumed true for the purposes of ruling on the motion to dismiss. Plaintiff Eugene Winkler is a minister and plaintiff Gary Gerson is a rabbi. Plaintiffs Timuel Black and Mary Cay Marubio are active community leaders. Plaintiff C. Douglas Ferguson is an Eagle Scout. What binds each of the plaintiffs for the purpose of their lawsuit against HUD and Defense is that they are all federal taxpayers who declare that they believe "in the separation of church and state, and therefore object[] to the expenditure of federal tax monies in endorsing religion." Plaintiffs assert standing against it solely on the basis of their status as federal taxpayers.

The Department of Defense is an executive department of the United States, and includes all executive parts, field headquarters, forces, reserve components, installations, and functions under the control or supervision of the Secretary of Defense, including those of the Department of the Army, the Department of the Navy, and the Department of the Air Force.

Defendant William S. Cohen is the Secretary of Defense of the United States, and is, therefore, the head of Defense according to plaintiffs.

3

Defendant the United States Department of Housing and Urban Development is an executive department of the United States.

Defendant Andrew Cuomo is the Secretary of HUD and is, therefore, the head of HUD according to plaintiffs.

**B.   Government Sponsorship of BSA Scouting Programs**

Plaintiffs allege that the BSA is a federally-chartered corporation that has established various youth programs for use by community organizations.  Youth programs seek to develop upstanding young American citizens by implementing religious concepts, patriotism, and sense of civic duty.  The programs take shape in the form of scouting units.  Membership in scouting units breaks down into three divisions.  Cub Scouting is a program for boys in the first through fifth grades.  The Boy Scouts unit is available to boys who have completed the fifth grade or, who are between the ages of eleven and seventeen.  The Varsity scouts (a part of Boy Scouts) is a program for young men aged fourteen through seventeen.  Venturing is a scouting program for young men and women aged fourteen through twenty.

Plaintiffs allege that BSA makes its scouting programs available for use by community organizations such as professional organizations, governmental bodies, and religious, educational, civic, fraternal, business, labor, and citizens' groups -- including the defendants.  These organizations are called "chartered organizations."  They are bound to the BSA's

4

guidelines by way of a charter agreement.  The charter agreement allows the chartered organization to use the scouting program under its own management and leadership.  The chartered organization is responsible for providing its scouting unit with adult leadership, a meeting place, and support materials for the various scouting activities.

The charter agreement between BSA and both Defense and HUD specifies that they must agree to and accept the BSA bylaws and rules and regulations.  One of those rules and regulations is the BSA Declaration of Religious Principle, which provides in relevant part that:

> "The Boy Scouts of America maintains that no member can grow into the best kind of citizen without recognizing an obligation to God and, therefore, recognizes the religious element in the training of the member, but is absolutely non-sectarian in its attitude toward that religious training.  The Boy Scouts of America's policy is that the home and the organization or group with which the member is connected shall give definite attention to religious life."

Plaintiffs allege that all charter organizations and all of its volunteer adult leaders must subscribe to the declaration of religious principle.

Scouts -- at all levels of membership mentioned above -- must declare an oath of allegiance to their respective scouting unit.  The words in the oaths themselves are different at each level of scouting membership.  What they have in common, however, is a requirement for the scout to affirm a belief in God.

5

Furthermore, plaintiffs assert that the BSA's Guidelines require the exclusion of anyone who refuses to do so.

Because HUD and Defense must agree to the terms set forth in the BSA's guidelines, plaintiffs allege that the government agencies' sponsorship of scouting, pursuant to specific statutes, endorses religion. Further, plaintiffs argue that the government agencies' policy of excluding membership on the basis of religious belief has a predominately religious effect.

### C.    The Statutes

Count two of plaintiffs' complaint charges Defense with expending federal tax monies in the ownership and operation of hundreds of scouting units to agencies within Defense under the terms of BSA's charter agreements. The charter agreement to which Defense agrees includes the requirement that all members affirm a belief in God.

Plaintiffs allege that Defense expends federal tax monies to operate scouting pursuant to congressional expenditure programs. Specifically, they allege that 10 U.S.C. § 1785 is a congressional expenditure program which provides for "youth sponsorship programs" at military installations. They also allege that 10 U.S.C. § 2544 is a congressional expenditure program which provides services and supplies in connection with national and world Boy Scout Jamborees. Next, plaintiffs allege that 10 U.S.C. § 2012 is a congressional expenditure program

6

which provides for the provision of services, equipment, transportation, facilities, and supplies by the Department of Defense to outside organizations, including BSA. Finally, plaintiffs allege that 10 U.S.C. § 508 is a congressional expenditure program which authorizes the provision of services, equipment, transportation, facilities, and supplies by the National Guard to organizations, including BSA.

Plaintiffs allege that each of the aforementioned statutes violate the first amendment's establishment clause because they expend federal tax monies on scouting units which limit participation on the basis of religious belief. Therefore, they seek declaratory judgment and injunctive relief against the Department of Defense and Secretary of Defense for acting pursuant to an unconstitutional grant of power from Congress.

In count three of their complaint, plaintiffs allege that HUD expends federal tax funds as part of the Community Development Block Grant program, a congressional expenditure program set forth at 42 U.S.C. § 5303, *et seq.* Plaintiffs also allege that HUD supports the BSA through the Public Housing Drug Elimination program, a congressional expenditure program set forth at 42 U.S.C. § 11902, *et seq.* Therefore, plaintiffs also seek declaratory judgment and injunctive relief against the Secretary of HUD for acting pursuant to an unconstitutional grant of power from Congress.

## II. *Standard for a Motion to Dismiss*

HUD and Defense move to dismiss the complaint for lack of jurisdiction, each claiming that plaintiffs' lack standing to bring suit. HUD argues that plaintiffs do not have a cause of action under the court's federal question jurisdiction. 28 U.S.C. § 1331. Defense argues (HUD has adopted their motion) that plaintiffs' lack standing because the statutes they contend are constitutional are not derived from Congress' power to tax and spend under Article I, § 8 of the Constitution, but from other constitutional powers that are not amenable to suit by plaintiffs who allege standing only as federal taxpayers.

When considering a motion to dismiss for lack of standing, the court accepts all well-pled factual allegations as true, and draws all reasonable inferences in favor of the plaintiff. *Retired Chicago Police Ass'n, v. City of Chicago,* 76 F.3d 856, 862 (7th Cir. 1996); *Sanner v. Board of Trade,* 62 F.3d 918, 925 (7th Cir. 1995).

Standing "is a threshold question in every federal case because if the litigants do not have standing to raise their claims, the court is without authority to consider the merits of the action." *Warth v. Seldin,* 422 U.S. 490, 498 (1975). Article III of the Constitution requires a party seeking to invoke a federal court's jurisdiction to demonstrate that: (1) he personally has suffered some actual or threatened injury as a

result of the defendants' misconduct; (2) the injury is fairly traceable to the challenged action; and (3) the injury is likely to be redressed by a favorable decision. *Valley Forge Christian College, v. Americans United for the Separation of Church and State, Inc.,* 454 U.S. 464, 472 (1982).

The Seventh Circuit has noted "where standing is challenged as a factual matter, the plaintiff bears the burden of supporting the allegations necessary for standing with 'competent proof.' 'Competent proof' requires a showing by a preponderance of the evidence that standing exists." *Perry v. Village of Arlington Heights,* 186 F.3d 826, 829 (7th Cir. 1999); *citing, Retired Chicago Police Ass'n,* 76 F.3d at 862. In sum, while the court must accept all reasonable allegations from the plaintiff as true, the burden of proving standing by a reasonable probability is theirs. *Id.*

## III. *Sovereign Immunity*

### A.    **Sovereign Immunity and the Administrative Procedure Act**

Plaintiffs' complaint invokes federal question jurisdiction. HUD argues[2] this court is without jurisdiction to hear plaintiffs' complaint because the United States has not waived sovereign immunity.  HUD argues that the only available waiver of sovereign immunity would fall under §702 of the Administrative Procedure Act (the "APA") which waives sovereign immunity for non-monetary suits against federal agencies.

The United States may not be sued without its express consent.  *Dep't of the Army, v. Blue Fox, Inc.,* 525 U.S. 255, 260 (1999); *FDIC v. Meyer,* 510 U.S. 471, 475, 114 S.Ct. 996 (1994). HUD argues that plaintiffs have failed to establish a waiver of the United States' immunity to bring their claims.  HUD argues that the APA (5 U.S.C. §§ 701-706) "provides the only possible waiver" for plaintiffs' claims.  Section 702 of the APA waives sovereign immunity for plaintiffs who seek injunctive relief for "injuries arising from agency action."  Neither the first amendment, HUD argues, nor this court's power to hear federal question disputes pursuant to 28 U.S.C. § 1331, waives the power of sovereign immunity.  Therefore, § 702 is plaintiffs' only recourse, according to HUD.

---

[2]       Defense has joined HUD's motion on this issue.

Section 702 of the APA provides:

> An action in a court of the United States seeking
> relief other than money damages and stating a claim
> that an agency or an officer or employee thereof acted
> or failed to act in an official capacity or under color
> of legal authority shall not be dismissed nor relief
> therein be denied on the ground that it is against the
> United States or that the United States is an
> indispensable party.

HUD maintains that the court should not imply a right of
action under the Constitution where an exclusive statutory scheme
exists which provides a comprehensive cause of action. Put
another way, HUD contends that plaintiffs' complaint attempts to
end-run the established administrative process of the APA by
suing directly under the first amendment. Since plaintiffs seek
to challenge official government action, HUD argues, the APA
offers the only avenue for redress of their grievances absent a
waiver of sovereign immunity.

**B.     *Larson Doctrine***

Plaintiffs counter that the discussion about the APA and its
requirements is irrelevant because, pursuant to the sovereign
immunity exception created in *Larson v. Domestic and Foreign
Commercial Corporation,* 337 U.S. 682, 69 S.Ct. 1457 (1949), their
suit may be heard under federal question jurisdiction.  28 U.S.C.
§ 1331.

11

In *Larson,* the Supreme Court held that a suit against a "government officer in his official capacity is not a suit against the sovereign if (1) the officer's powers are limited by statute and his actions were ultra vires, or (2) the officer was acting unconstitutionally or pursuant to an unconstitutional grant of power from the sovereign." *Clark v. United States,* 691 F.2d 837, 840 (7th Cir. 1982).*; citing, Larson,* 337 U.S. at 689-690, 69 S.Ct. at 1461.  The Supreme Court subsequently explained in *Dalton v. Specter* that *Larson* means "sovereign immunity would not shield an executive officer from suit if the officer acted either unconstitutionally or beyond his statutory powers."  511 U.S. 462, 472, 114 S.Ct. 1719, 1726 (1994) (internal quotations omitted).  Therefore, because a suit proceeding under *Larson* assumes that a governmental officer acted in either excess of his powers or contrary to the constitution, concerns over waiver of sovereign immunity do not obtain, as it "never attached in the first place."  *Chamber of Commerce of the United States, v. Reich,* 74 F.3d 1322, 1329 (D.C. Cir. 1996).

A suit which falls within the *Larson* exception may still not afford a plaintiff a remedy "if the relief requested can not be granted by merely ordering the cessation of the conduct complained of but will require affirmative action by the sovereign or the disposition of unquestionably sovereign property."  *Clark,* 691 F.2d at 840.  Therefore, the Seventh

Circuit holds that "sovereign immunity precludes suits falling within the *Larson* exceptions only 'where to do otherwise would impose an intolerable burden on governmental functions, outweighing any consideration of private harm.'" *Id.; quoting, Schlafly v. Volpe,* 495 F.2d 273, 280 (7th Cir. 1974).

HUD voices its objections to plaintiffs' invocation of the *Larson* doctrine.

First, HUD argues that since plaintiffs' complaint makes allegations directly against HUD and Defense, the complaint is deficient because agencies cannot be sued absent a waiver of sovereign immunity. This is the basis of HUD's argument that plaintiffs' claims may only proceed under the APA. Again, the *Larson* doctrine states that a suit is not against the sovereign if it alleges that an individual officer acted in excess of his powers or that his actions were pursuant to an unconstitutional grant of power. HUD argues that plaintiffs' complaint stretches the *Larson* doctrine because, in addition to naming individual officers of HUD and Defense, the complaint also names the two agencies as defendants.

It is "clear that the United States and its agencies may not be named as parties and sued without specific statutory consent and that waiver of sovereign immunity will not be implied but must be unequivocally expressed." *Ogden v. United States,* 758 F.2d 1168, 1177 (7th Cir. 1985); *see, Blue Fox, Inc.,* 525 U.S.

255, 119 S.Ct. 687. But, where injunctive relief is sought
against an individual officer under the *Larson* doctrine, no
'direct and personal' involvement is required in order to hold
high-level officials responsible for the actions of subordinates
and to subject them to the equitable jurisdiction of the court."
*Id.*

Plaintiffs name and make allegations against both the
Secretary of HUD and the Secretary of Defense. Specifically, as
it pertains to the counts against Defense, the complaint alleges
that "the Secretary of Defense and the Department of Defense act
pursuant to Article I, § 8 of the United States Constitution, but
such expenditures are in violation of the First Amendment to the
Constitution." In their request for declaratory relief against
Defense, plaintiffs seek "a judgment declaring that the Secretary
of Defense and the Department of Defense have violated the
Establishment Clause of the First Amendment to the United States
Constitution by sponsoring Scouting Unites under policies that
limit participation in Scouting Units on the basis of religious
belief . . ." Plaintiffs request for injunctive relief against
Defense seeks " a permanent injunction enjoining the Secretary of
Defense and the Department of Defense . . . from expending tax
funds in support of BSA Scouting Programs."

Plaintiffs' allegations against HUD are similar: "the
Secretary of HUD and the Department of HUD act pursuant to

Article I, Section 8 of the United States Constitution, but such expenditures are in violation of the First Amendment to the Constitution." Plaintiffs' request for declaratory relief against HUD also seeks "a judgment declaring that the Secretary of Housing and Urban Development and the Department of Housing and Urban Development have violated the Establishment Clause of the First Amendment to the United States Constitution by expending funds in support of BSA Scouting Programs." Plaintiffs' request for injunctive relief seeks "a permanent injunction against the Secretary of Housing and Urban Development and the Department of Housing and Urban Development . . . from expending funds in support of BSA Scouting Programs."

Plaintiffs allege that the Secretaries of HUD and Defense are acting pursuant to unconstitutional grants of power. To that extent, their allegations are consistent with what *Larson* sanctions. Plaintiffs may not, however, bring suit against the agencies under federal question jurisdiction. Rather, plaintiffs would indeed need to bring their grievance pursuant to § 702 of the APA. *Larson* and its progeny clearly hold that suits must make allegations against individual officers. Plaintiffs have not supported their extension of *Larson* to claims for injunctive relief against the agencies themselves.

HUD makes a second point regarding *Larson*, closely related to its first regarding *Larson*, that the *Larson* doctrine met its

demise with the enactment of the APA. Specifically, HUD argues the APA was promulgated to provide an administrative process for those seeking injunctive relief against government agencies. Therefore, since the advent of the APA, HUD contends that Congress signaled that courts no longer needed "to rely on *Larson's* fictions in equitable challenges to agency action."

This argument fails where HUD's first argument concerning *Larson* had some merit. As stated above, *Larson* has never stood for the proposition that a plaintiff may seek redress against a government agency absent a waiver of sovereign immunity. Plaintiffs may, however, invoke *Larson* when alleging that the Secretaries of HUD and Defense are acting pursuant to an unconstitutional grant of power. For this purpose, *Larson* is still valid law – HUD's contention notwithstanding. *Dalton v. Specter,* 511 U.S. 462, 472, 114 S.Ct. 1719, 1726 (1994). *Larson* applies to a separate claim of injury than those within the APA's process.

The court also finds no merit in HUD's argument that the *Larson* doctrine is inapplicable in this case because, as it contends, a regulatory scheme – the APA – provides for relief. That is, HUD suggests that the court may not allow plaintiffs to proceed under the well-recognized *Larson* exception given that the APA is at the plaintiffs' disposal.

While the government agencies themselves are not amenable to suit under this court's federal question jurisdiction, the *Larson* doctrine does allow plaintiffs to bring their claims against the Secretaries of HUD and Defense. Thus, the motion to dismiss against HUD and Defense is granted, but the claims against the Secretaries in their official capacity survives.

## IV. *Federal Taxpayer Standing*

Defense contends in their motion that plaintiffs lack standing to sue as federal taxpayers because the statutes they attack as unconstitutional do not arise from Congress' powers under Article I, § 8 of the Constitution, the tax and spend clause. They argue that taxpayer standing is only conferred on those who challenge congressional expenditure programs enacted pursuant to the tax and spend clause.

Plaintiffs counter that the statutes identified in their complaint are indeed congressional expenditure programs arising from Congress' powers to tax and spend.

Generally, prospective litigants do not have standing solely based on their status as federal taxpayers. *Frothingham v. Mellon,* 262 U.S. 447 (1923). In *Frothingham,* the Supreme Court held that a federal taxpayer's "interest in the moneys of the treasury – partly realized from taxation and partly from other sources – is shared with millions of others, is comparatively minute and indeterminable, and the effect upon future taxation,

of any payment out of the funds, so remote . . . that no basis is afforded for an appeal of the preventive powers of a court of equity." *Id.* at 487.

The court determined that "the administration of any statute, likely to produce additional taxation to be imposed upon a vast number of taxpayers, the extent of whose several liability is indefinite and constantly changing, is essentially a matter of public and not of individual concern." *Id.*

In *Flast v. Cohen,* 392 U.S. 83 (1968), the Supreme Court created an exception to *Frothingham* and ruled that, in certain circumstances. a federal taxpayer does have the requisite stake in the outcome of prospective litigation to gain standing. *See, Bartley v. United States,* 123 F.3d 466, 470 (7th Cir. 1997); *Zielke,* 845 F.2d at 1469-70. In *Flast,* plaintiffs were federal taxpayers who challenged the expenditure of federal tax funs under the Elementary and Secondary Education Act ("ESEA") which, they alleged, violated the Establishment clause. The *Flast* court determined that "[i]n ruling on standing, it is both appropriate and necessary to look at the substantive issues . . . to determine whether there is a logical nexus between the status asserted and the claim sought to be adjudicated . . . " *Id.* at 101. Therefore, the Supreme Court concluded that, in circumstances where federal taxpayers have the "personal stake and interest that impart the necessary concrete adverseness to

such litigation so that standing can be conferred on the taxpayer *qua* taxpayer consistent with the constitutional limitation of Article III." *Id.*

To establish the necessary stake for standing, a federal taxpayer must meet two requirements. *Id.* at 102. First, the taxpayer must demonstrate a nexus between the status as a taxpayer and the legislative enactment at issue. *Id.* at 103. It is not sufficient for a taxpayer to allege an incidental expenditure of tax funds in the administration of an essentially regulatory statute. Thus, the taxpayer must allege that the specific congressional expenditure program violates the taxing and spending clause. *Id.; See, In re United States Catholic Conference,* 885 F.2d 1020, 1028 (2nd Cir. 1989). The taxpayers in *Flast* alleged that the ESEA funded the unconstitutional activity. Thus, the first requirement of the Supreme Court's test for standing was met.

As for the second part, a taxpayer must establish a nexus between the status as a taxpayer and the precise nature of the constitutional infringement alleged. *Flast,* 392 U.S. at 103. To do this, the "taxpayer must show that the challenged enactment exceeds specific constitutional limitation imposed on the exercise of the congressional taxing and spending power and not simply that the enactment is generally beyond the powers delegated to Congress by Art. I., § 8." *Id.* at 102-03.

The taxpayers in *Flast* alleged that a violation of the Establishment clause exceeds specific constitutional limitations on Congress' taxing and spending power. The Supreme Court agreed, and held that one of the "specific evils feared" by the framers of the Constitution was that the taxing and spending power would be used to favor one religion over another. *Id.* The taxpayers in *Flast* showed the existence of both nexuses and, therefore, the Supreme Court ruled that they had the requisite stake in the outcome of litigation and were an appropriate party the action." *Id.* at 103.

If a federal taxpayer only alleges that Congress has violated the Constitution without challenging a specific expenditure program, then the taxpayer does not have standing. *Schlesinger v. Reservists Committee to Stop the War,* 418 U.S. 208, 228 (1974); *Cf. Lamont v. Woods,* 948 F.2d 825, 830 (2nd Cir. 1991) ("[i]n practice, the double nexus test established in *Flast* has been satisfied in only a small class of cases involving exercises of Congress' taxing and spending power . . . that allegedly violate the specific constitutional limitation upon that power imposed by the Establishment Clause.")

As Defense notes, a federal taxpayer must challenge an "exercise of authority conferred by the Taxing and Spending Clause of Art. I, § 8" to gain standing. *Valley Forge Christian College,* 454 U.S. at 480, 102 S.Ct. at 762. In *Valley Forge,* the

Supreme Court held that plaintiffs did not meet the first prong of *Flast's* requirement for taxpayer standing for two reasons. First, the challenged action was not an act of Congress but that of an agency which decided to transfer a parcel of federal property. *Id.* at 454 U.S. at 479, 102 S.Ct. at 762. Second, the Supreme Court held that action was "not an exercise of authority conferred by the Taxing and Spending Clause of Art. I., § 8." *Id.* at 454 U.S. at 480, 102 S.Ct. at 762. Rather, the court held that plaintiffs were protesting an exercise of Congress' authority under the Property clause. *Id.* Therefore, plaintiffs did not have standing as federal taxpayers. The *Valley Forge* court contrasted its case with the successful bid for taxpayer standing in *Flast.* The *Flast* plaintiffs had standing "because 'their constitutional challenge [was] made to an exercise by Congress of its power under Art. I, § 8, to spend for the general welfare.'" *Id.* at 454 U.S. at 479, 102 S.Ct. at 762.

Defense cites another case, *Schlesinger v. Reservists Committee to Stop the War,* 418 U.S. 208, 94 S.Ct. 2925 (1974), where plaintiffs were federal taxpayers who sued to enjoin members of Congress from serving in the military reserves. The Supreme Court again found that plaintiffs lacked standing as taxpayers to pursue their action against the federal government because their claim was a generalized grievance rooted in the incompatibility clause (Article I, § 6).

Defense contends that none of the four statutory provisions that plaintiffs set forth in their complaint alleging the unconstitutional expenditure of funds was enacted pursuant to Congress' power to tax and spend. Rather, Defense contends they were enacted pursuant to other constitutional powers. Thus, Defense moves to dismiss plaintiffs' complaint for failure to allege that it meets the requirements of *Flast's* first prong.

In its motion, Defense argues that none of the four statutes that plaintiffs challenge is a congressional expenditure program derived from its power under the tax and spend clause. Defense argues that 10 U.S.C. § 1785, the Youth Sponsorship Program, is not a congressional expenditure program designated to sponsor scouting units, but was enacted under Congress' power "to make Rules for the Government and Regulation of the land and naval Forces" (Art. I, § 8, cl. 14), and the Necessary and Proper clause (Art. I, § 8, cl. 18). They argue that "even if implementing § 1785 involves some expenditure of funds, it clearly is not a program to disburse funds pursuant to Congress' taxing and spending power."

Second, Defense argues that 10 U.S.C. § 2544, Boy Scout Jamborees, provides only surplus materials and medical supplies to scouting units, and was not enacted pursuant to the tax and spend clause, but under the property clause (Art. IV, § 3, cl. 2) which authorizes the government to lend property. Further,

22

Defense contends that the "federal salaries of the personnel who provide services at jamborees are authorized by provisions that allow for training of armed forces members, as well as the Necessary and Proper clause."

Third, Defense contends that 10 U.S.C. § 2012, Military Training Involving Outside Organizations, authorizes the military to provide assistance and support for outside organizations and activities. Defense claims that the statute's primary focus is military training and, as such, originates from the military clauses (Art. I, § 8, cls. 12, 13, and 14) as well as the Necessary and Proper Clause.

The fourth and last statute that plaintiffs challenge against Defense is 32 U.S.C. § 508, Assistance for Youth and Charitable Organizations. Defense contends that this statute provides for national guard units and members to provide services to outside organizations. Defense contends that this statute also has the benefit of providing training for military members. Defense calls this a "regulatory statute" that arises under the Second Militia Clause, Art. I, § 8, cl. 16, and the Necessary and Proper clause.

The court is not willing – at this point – to dismiss plaintiffs' claim. Plaintiffs' allegations are assumed true. In denying its first complaint, the court held that it, when re-pleading, would have to challenge congressional expenditure

programs to gain taxpayer standing. The court finds that its second amended complaint makes allegations which survive the generous scrutiny of Federal Rules of Civil Procedure 12(b)(1) and (6). Defense's protests notwithstanding, the court cannot conclude at this stage of litigation that the statutes plaintiffs challenge fail to name congressional expenditure programs that violate the Establishment Clause.

HUD also moves to dismiss plaintiffs' complaint for lack of federal taxpayer standing. HUD contends that neither the Public Housing Drug Elimination program ("PHDEP") (42 U.S.C. § 11901 *et seq.*; nor the Community Development Block Grant program ("CDGB") specifically identifies BSA scouting units as eligible activities for funds. Therefore, HUD contends that to the extent funds are expended on BSA activities, it is the "action of individual CDGB and PHDEP state and local grantees that may have decided to use CDGB and PHDEP funds to support BSA programs." Essentially, HUD contends that plaintiffs are picking a fight with the wrong party as it is not directly responsible for funds generated by these two statutes being passed along to the BSA.

In *Bowen v. Kendrick,* the Supreme Court held that a taxpayer's challenge to an allegedly unconstitutional expenditure program is not "any less a challenge to congressional taxing and spending power simply because the funding authorized by Congress has flowed through and been administered by the Secretary.

Indeed, *Flast* itself was a suit against the Secretary of HEW, who had been given the authority under the challenged statute to administer the spending program that Congress had created. In subsequent cases . . . we have not questioned the standing of taxpayer plaintiffs to raise Establishment Clause challenges, even where their claims raised questions about the administratively made grants." 487 U.S. 589, 619 (1988).

HUD has not supported its assertion that the challenged statutes are any less amenable to suit because the funds are channeled through the Secretary of HUD to other organizations. The funds still originate through a congressional expenditure program which the plaintiffs challenge violates the Establishment Clause. HUD has not presented the court with justification to impose a bar to taxpayer standing where the routing of those funds pass through a chain of administration.

## Conclusion

For the reasons stated above, the motions to dismiss by HUD and Defense are GRANTED against the named federal agencies, but DENIED against the Secretaries of HUD and Defense in their official capacities.

_Blanche M. Manning_
**Blanche M. Manning, U.S.D.J.**

**Dated:** AUG 28 2001